**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**BRENT WESTERFELD**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHELLE BUMGARNER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DUSTY E. RHODES,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀Appellant-Defendant,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀No. 11A01-1109-CR-487
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
STATE OF INDIANA,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀Appellee-Plaintiff.⠀⠀⠀⠀⠀⠀)

APPEAL FROM THE CLAY CIRCUIT COURT
The Honorable Joseph D. Trout, Judge
Cause No. 11C01-0808-FB-306

**May 31, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

Following a jury trial, Dusty Rhodes, Jr., was convicted of dealing in methamphetamine, a Class B felony. The sole issue on appeal is whether sufficient evidence was presented to sustain his conviction. Concluding that sufficient evidence was presented, we affirm.

## Facts and Procedural History[1]

N.S. agreed with police to be a confidential informant and arrange a controlled drug buy from Rhodes.[2] In August 2007, N.S. drove to Rhodes's home and picked up Rhodes and Jonah Childress with the intention of Rhodes selling methamphetamine to undercover Officer Terry Silvers. See Transcript at 232. N.S. then drove herself, Rhodes, and Childress to the pre-determined meeting place, a gas station in Brazil, Indiana.

Upon arrival, and after police searched N.S. in the gas station restroom to ensure she did not possess contraband and she returned to her car, Officer Silvers pulled into the gas station in his own car, got out, and entered N.S.'s car. N.S. sat in the driver's seat, Rhodes sat in the front passenger's seat, Childress sat in the rear seat behind N.S., and Officer Silvers sat in the rear seat behind Rhodes, after moving a baby car seat towards Childress. After brief introductions and some joking, Officer Silvers looked down and

---

[1] We thank counsel for their excellent advocacy during oral argument on April 10, 2012 at the Court of Appeals Courtroom in Indianapolis.

[2] N.S. was arrested and charged with attempted dealing in methamphetamine, a Class A felony, possession of a controlled substance, a Class D felony, and two counts of unlawful possession or use of a legend drug, Class D felonies. She subsequently agreed to serve as a confidential informant, which led to her involvement in the present case.

reached into his wallet for cash; when he looked up, the purported methamphetamine[3] was on the front edge of the baby car seat next to him.

Officer Silvers handed cash to Rhodes and picked up the purported methamphetamine to "check the meth out to make sure it looked like meth to the best of [his] ability." Tr. at 244. He "held it up to look at – to see if it had the glass shards in it that, you know, it typically has to make sure that it actually looked like dope, and it did." Id. (testimony of Officer Silvers); see id. at 286 (Officer Larry Richmond testifying that, in listening to the audio recording, Officer Silvers "was kinda looking at it to check it out and made a comment that there's no black stuff in this, talking about the purity of the drug and whether it was good quality and that kind of thing.").

After a brief discussion about the purity of the substance, Officer Silvers placed it in his wallet, exited N.S.'s car, and went to the Clay County Sheriff's Department for debriefing. Officer Silvers turned over the purported methamphetamine to Officer Larry Richmond, who placed it in the drug safe located at the Clay County Sheriff's Department. Id. at 118-20; id. at 248. Then Detective Jerry Siddons, who "was the only one with access to it, that [Officer Todd Stemm] know[s] of," retrieved it from the safe and turned it over to Officer Stemm.[4] Id. at 119-20.

Officer Stemm packaged the purported methamphetamine according to protocols and submitted it to the State Laboratory for testing. Id. at 120-22. The evidence clerk of

---

[3] Nowhere in the record does it explicitly state how the purported methamphetamine was packaged.

[4] On direct examination, Officer Stemm testified to the following:
Q: And you have personal knowledge that [Detective Siddons] removed it from the safe?
A: He gave it to me, so I would assume, yes. I believe he was the only one that had it.
Q: And you took it directly from him?
A: Yes.
Tr. at 120.

the State Laboratory accepted the item, assigned a number and a barcode, and stored it in the evidence storage vault which has limited access. Id. at 130-32. A forensic scientist with the State Laboratory, Karen Bowen, made an appointment with her evidence clerk, retrieved the item for her testing, and made a preliminary check regarding proper protocols for the chain of custody. Id. at 132-35. Finding no breaches in the chain of custody based on the paper record and packaging of the item itself, Bowen conducted tests on the substance, which tested positive for methamphetamine. Id. at 138-44.

The State charged Rhodes with dealing in methamphetamine, a Class B felony. Rhodes's first jury trial, in February 2011, concluded with a deadlocked jury. The trial court declared a mistrial and ordered a new trial. Officer Stemm retrieved the item from the State Laboratory following Bowen's testing, stored it at the Brazil Police Department's evidence storage area with limited access, and then retrieved it from storage and transported it to Rhodes's second trial, in August 2011. Id. at 124-26. The State entered the item into evidence as Exhibit 1 and Rhodes did not object. Id. at 126-27. Rhodes's second jury trial concluded with a guilty verdict. The trial court entered a judgment of conviction and sentenced Rhodes to six years with one year suspended to probation. Rhodes now appeals his conviction. Additional facts will be supplied as appropriate.

Discussion and Decision

I. Standard of Review

Our standard of reviewing a sufficiency claim is well-settled: we do not assess witness credibility or reweigh the evidence, and "we consider only the evidence that is favorable to the judgment along with the reasonable inferences to be drawn therefrom to

4

determine whether there was sufficient evidence of probative value to support a conviction." Staten v. State, 844 N.E.2d 186, 187 (Ind. Ct. App. 2006), trans. denied. "We will affirm the conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt." Id.

## II. Dealing in Methamphetamine

### A. Rhodes's Argument

Rhodes does not challenge the chain of custody of the item between when Officer Stemm submitted it to the State Laboratory and it was introduced at Rhodes's second trial.[5] Brief of Appellant at 8. Nor does he contend that the State failed to prove this item tested positive for methamphetamine. Id. ("The State did prove that the package Officer Stemm sent to the State Police Lab, [later entered into evidence as] Exhibit 1, is methamphetamine."). Rather, Rhodes argues "the State failed to prove . . . that the substance in Exhibit 1 is in fact the item that [Officer] Silvers picked up from the baby car seat in [N.S.]'s car, or that the substance [Officer] Silvers picked up is methamphetamine." Id.

The State characterizes this as a challenge to the chain of custody from the time Officer Silvers received the item to the time Officer Stemm submitted it to the State Laboratory. Rhodes characterizes this as a specific gap in the evidence which renders the

---

[5] Implied in this concession is that Rhodes does not allege any improper irregularity in the handling of the item at issue regarding his first trial, which resulted in a mistrial, or the time between his first trial and when the item was introduced into evidence at his second trial.

evidence presented insufficient to sustain his conviction. Rhodes does not make any other argument as to the sufficiency of the evidence.[6]

## B. Sufficiency of the Evidence

To convict Rhodes of dealing in methamphetamine as a Class B felony, the State was required to prove beyond a reasonable doubt that Rhodes knowingly or intentionally delivered methamphetamine. Ind. Code § 35-48-4-1.1(a).

We note at the outset that if Rhodes were to now challenge a portion of the chain of custody of Exhibit 1, he would have waived this challenge by failing to object during trial. See Culley v. State, 179 Ind. App. 345, 385 N.E.2d 486, 487 (1979) ("Insofar as error is claimed for an insufficient chain of custody, it is waived for failure to object on those grounds at the hearing below."). But, proceeding as Rhodes's specific argument challenges the sufficiency of the evidence, we do not deem his sole appellate challenge to be waived.

In reviewing the evidence presented, the following evidence sets the stage for addressing Rhodes's argument. Rhodes testified in several ways that "even before [he, Childress, and N.S.] left [Rhodes's] house," Rhodes knew a drug deal was planned to occur. Tr. at 350. He admitted that Officer Silvers was provided with the drugs, and while he denies handing the drugs to Officer Silvers or accepting payment, others testified as to his involvement. Specifically, Childress, in a Pre-Sentence Investigation Report for his own conviction for involvement in the incident, stated that he "was in the car when [Rhodes] sold the dope to the officer . . . . [Rhodes] sold and possessed the

---

[6] It is notable that Rhodes does not raise an issue with Officer Silvers's failure to observe Rhodes place the purported methamphetamine on the baby car seat.

6

dope." Id. at 325. Although Childress disavowed these statements at Rhodes's trial, the statements were presented as evidence for the jury to weigh. N.S. testified that she drove Rhodes to Brazil and that Rhodes knew this was for the purpose of him selling methamphetamine to another.[7] Id. at 179-80. N.S. testified that Rhodes possessed the methamphetamine prior to the sale, id. at 186, and that Rhodes set the methamphetamine down for Officer Silvers to pick up. Id. at 201. Officer Silvers testified that the plan was to purchase two grams of methamphetamine, and that while he was looking down to take money from his wallet, the "methamphetamine showed up" on the baby car seat. Id. at 243. Officer Silvers testified that he "took the money and . . . handed it straight to Mr. Rhodes." Id. at 243-44. With all of this evidence combined, one may reasonably infer that Rhodes possessed a substance that might have been methamphetamine, and exchanged this substance for money with Officer Silvers.

We now directly address Rhodes's appellate contention that insufficient evidence was presented that the substance Officer Silvers received is the same item Officer Stemm submitted to the State laboratory. Officer Silvers answered in the affirmative when asked if "the drugs" were "provided to Officer Richmond to maintain for chain [sic] of custody." Id. at 248. Officer Stemm testified that Officer Richmond "placed it [(referring to the substance received from Officer Silvers)] in a drug – in what we call a drug safe" in the Sheriff's Department. Id. at 118-19. Officer Stemm answered in the affirmative when asked if Detective Siddons "removed it from the safe," and then stated

---

[7] At oral argument, defense counsel repeatedly contended that a close reading of the confidential informant's testimony would reveal no use of the word "meth." On page 180 of the transcript, N.S. testified that Rhodes would be selling "Meth." Tr. at 180. Childress also testified that the drugs at issue were two grams of methamphetamine. Id. at 304; see id. at 319.

that Detective Siddons "gave it to me." Id. at 120. Officer Stemm again answered in the affirmative when asked if he "took it directly from [Detective Siddons]." Id. Officer Stemm then proceeded to describe how he packaged the item and submitted the item to the State Laboratory. Id. at 120-23. These portions of the officers' testimonies are sufficient to fill what Rhodes contends is a gap in the evidence. Therefore, we conclude that sufficient evidence was presented.

## Conclusion

Sufficient evidence was presented that the substance which Officer Silvers picked up from the baby car seat was methamphetamine and was the same as that introduced into evidence as Exhibit 1. Therefore, we affirm.

Affirmed.

BAKER, J., and KIRSCH, J., concur.